STATE OF NORTH CAROLINA
v.
HENRICO DAMONT CATOE.
No. COA08-1541
Court of Appeals of North Carolina.
Filed June 16, 2009
This case not for publication
Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Lars F. Nance, for the State.
Mercedes O. Chut for defendant-appellant.
JACKSON, Judge.
Henrico Damont Catoe ("defendant") appeals from a judgment consistent with a jury verdict finding him guilty of possession with intent to sell or deliver cocaine. For the following reasons, we hold no error.
Prior to trial, defendant filed a motion to suppress evidence seized from his person and vehicle. At the suppression hearing, Officer Brian Sharf ("Officer Sharf") of the Charlotte-Mecklenburg Police Department ("Police Department") testified that on the afternoon of 9 November 2006, he was riding in the back seat of an unmarked vehicle in the 600 block of Baldwin Avenue in Charlotte, North Carolina. Officer Sharf and two plain clothes officers were attempting to serve a warrant on someone unrelated to this case. As the officers drove down the street, Officer Sharf noticed a group of three black males standing on the sidewalk in front of a house and someone walking away from a house. The officers pulled over and parked behind other cars on the street at a distance of approximately ten to twenty yards from the house. Officer Sharf saw a white male walk towards the group, which included defendant. The white male began talking, reached into his pocket and pulled out green colored paper, which "appeared to be U.S. currency." Defendant then reached into his pocket and handed something to the white male. The white male "immediately balled his hand up, and walked down the street again, past us with his hand balled up."
Officer Sharf, who was in uniform, exited the unmarked vehicle and began following the white male. After they turned the corner, out of sight from the group of males, Officer Sharf approached the white male and said, "[E]xcuse me, sir." The white male turned around and put his balled up hand into his pocket. Officer Sharf informed the white male what he had observed and asked the white male what he had in his pocket. The white male responded that he did not have anything. Officer Sharf then asked the white male if he could search him. The white male consented to the search. Officer Sharf reached into the pocket where the white male had put his balled up hand and found what he believed to be a rock of crack cocaine. Officer Sharf asked the white male where he obtained the cocaine, and the white male responded that he had "just bought it from a black male down the street." Officer Sharf then radioed for back-up officers to come to Baldwin Avenue because the other two officers in the unmarked vehicle were in plain clothes.
When the back-up officers arrived, Officer Sharf returned to the house on Baldwin Avenue. The officers in the unmarked vehicle left, keeping "an eye on the area for us while we approached the house." Officer Sharf found defendant on the front porch with the two men he had seen earlier and an elderly man who lived there. Officer Sharf told defendant that he "believed that [defendant] was involved in the selling of crack cocaine," and defendant "became increasingly nervous." Officer Sharf asked defendant for consent to search his body, but defendant refused. At that point, Officer Sharf then told defendant that based upon what he had seen, he had probable cause to arrest him. Officer Sharf arrested defendant. Officer Grosse, one of the back-up officers, found six and one-half grams of cocaine in defendant's right front pants pocket. Police also retrieved $377.00 in U.S. currency from defendant's other pocket. Officer Sharf then asked defendant for permission to search his car. Defendant consented, and the search revealed a firearm.
The trial court denied defendant's motion to suppress in an oral order entered in open court. The trial court made findings consistent with Officer Sharf's testimony. The trial court concluded that Officer Sharf's observations constituted probable cause for the officer to arrest defendant and "the circumstances constitut[ed] as well an exigent circumstance." The trial court further concluded that the resulting search of defendant after his arrest was constitutional "pursuant to that arrest, and [the evidence against him] was not unconstitutionally seized."
Defendant's trial commenced later that day. Officer Sharf's testimony surrounding defendant's arrest was substantially the same as his testimony at the suppression hearing. Officers T.S. Gerald ("Officer Gerald") and Thomas Groose ("Officer Groose") also testified for the State. Officer Gerald testified that on 9 November 2006 he and other officers were on patrol on Baldwin Avenue looking for an individual with an outstanding warrant when their attention was drawn to a white male approaching defendant's location, so they parked. Officer Gerald observed the white male speak to defendant, then reach in his pocket and hand defendant something that appeared to be U.S. currency and was green in color. Based upon his involvement in undercover drug purchases, Officer Gerald believed he had witnessed a hand-to-hand drug transaction. At that point, Officer Sharf exited the vehicle and followed the white male down the street. Officer Gerald continued to watch the residence. Officer Sharf advised Officer Gerald that he had found illegal narcotics on the white male. After the back-up officers responded, Officer Gerald confirmed the identification of defendant as the one who had conducted the transactions with the white male, and left the area.
Officer Groose testified that when he arrived in response to Officer Sharf's request for additional units, defendant refused to stand up and would not cooperate with Officer Sharf. Based upon defendant's actions and the possibility of defendant's having a weapon, Officer Sharf placed handcuffs on defendant. After defendant was handcuffed, defendant shifted his body weight to prevent the search of his pockets. Because Officer Sharf was having difficulty controlling defendant, Officer Groose assisted in searching defendant. Officer Groose found a plastic bag containing what he believed to be individual rocks of crack cocaine in the pocket of defendant's jeans, and $377.00 in cash also was found on defendant's person. A chemist testified that the substance found on defendant was 5.6 grams of cocaine. At the close of the State's evidence, the court denied defendant's motion to dismiss.
Defendant testified on his own behalf. Defendant testified that he did not come into contact with a white male other than police officers, that he had $240.00 in cash on him, and that he did not have cocaine on him. Defendant again moved the court to dismiss the possession charge at the close of all the evidence, which motion was denied.
A jury found defendant guilty as charged. The trial court sentenced defendant to six to eight months imprisonment, suspended the sentence, and placed defendant on supervised probation for thirty-six months. Defendant appeals.
Defendant first contends that the trial court erred in denying his motion to suppress because the police lacked probable cause for a warrantless arrest. We disagree.
In reviewing the denial of a motion to suppress, we must determine "whether the trial court's findings of fact were supported by competent evidence, in which event they are binding on appeal, and whether those findings support the trial court's conclusions of law." State v. Styles, 185 N.C. App. 271, 273, 648 S.E.2d 214, 215 (2007) (citing State v. Cooke, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982)), aff'd, 362 N.C. 412, 665 S.E.2d 438 (2008). Defendant does not challenge the trial court's findings, but argues that the conclusions drawn from those findings are erroneous. We, therefore, review de novo the trial court's conclusion that the facts known to Officer Sharf at the time supported probable cause. Id.
"To be lawful, a warrantless arrest must be supported by probable cause." State v. Zuniga, 312 N.C. 251, 259, 322 S.E.2d 140, 145 (1984) (citations omitted), cert. denied, 484 U.S. 959, 98 L. Ed. 2d 384 (1987). An officer has probable cause to arrest a suspect if he has a "'reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty.'" Id. (quoting State v. Shore, 285 N.C. 328, 335, 204 S.E.2d 682, 687 (1974)). "Probable cause is a flexible, common-sense standard. It does not demand any showing that such a belief be correct or more likely true than false. A practical, nontechnical probability is all that is required." Zuniga, 312 N.C. at 262, 322 S.E.2d at 146.
Here, the trial court properly concluded the officers had probable cause to arrest defendant based upon their observations. The evidence shows that Officer Sharf saw what he believed to be a hand-to-hand drug transaction between defendant and a white male. Specifically, he saw the white male giving defendant what appeared to be U.S. currency; defendant reaching into one of his pockets and pulling out his closed fist; defendant's fist and the white male's hand meeting; the white male closing up his; and the white male walking away. Officer Sharf followed the white male and, upon being addressed by Officer Sharf, the white male stuffed his balled up hand into his pocket. After obtaining consent, Officer Sharf reached into the same pocket and found what he suspected to be a rock of crack cocaine. The white male told Officer Sharf that he had "just bought [the cocaine] from a black male down the street." Officer Sharf then walked back to the house on Baldwin Avenue and, when he informed defendant about his observations of the transaction between defendant and the white male, defendant became increasingly nervous.
Contrary to defendant's assertion, Officer Sharf did not rely only upon the white male's statement for probable cause to believe that defendant sold drugs. Rather, Officer Sharf, based on his years of experience with street drug intervention, already had observed what appeared to be a hand-to-hand drug transaction between defendant and the white male. The finding of the cocaine on the white male and the white male's statement merely confirmed Officer Sharf's observation of a hand to hand drug transaction. Given the totality of the circumstances, we agree with the trial court that officers had probable cause to arrest defendant. Accordingly, the trial court properly denied defendant's motion to suppress. Defendant also contends the trial court erred by denying his motion to dismiss based on insufficiency of the evidence. Defendant argues the State failed to present sufficient evidence of his intent to sell or deliver the cocaine. We disagree.
The standard for ruling on a motion to dismiss "is whether there is substantial evidence (1) of each essential element of the offense charged and (2) that defendant is the perpetrator of the offense." State v. Lynch, 327 N.C. 210, 215, 393 S.E.2d 811, 814 (1990) (citation omitted). Substantial evidence is that relevant evidence which a reasonable mind might accept as adequate to support a conclusion. State v. Patterson, 335 N.C. 437, 449-50, 439 S.E.2d 578, 585 (1994). In ruling on a motion to dismiss, the trial court must consider all of the evidence in the light most favorable to the State, and the State is entitled to all reasonable inferences which may be drawn from the evidence. State v. Davis, 130 N.C. App. 675, 679, 505 S.E.2d 138, 141 (1998).
Defendant was convicted pursuant to North Carolina General Statutes, section 90-95(a)(1), which prohibits possession with intent to sell or deliver a controlled substance. The elements of the crime of possession with intent to sell or deliver are: (1) possession of a substance; (2) the substance must be a controlled substance; and (3) there must be intent to sell or distribute the controlled substance. N.C. Gen. Stat. § 90-95(a)(1) (2007); State v. Fletcher, 92 N.C. App. 50, 55, 373 S.E.2d 681, 685 (1988). "While intent may be shown by direct evidence, it is often proven by circumstantial evidence from which it may be inferred." State v. Nettles, 170 N.C. App. 100, 105, 612 S.E.2d 172, 175-76, disc. rev. denied, 359 N.C. 640, 617 S.E.2d 286 (2005). "Based on North Carolina case law, the intent to sell or distribute may be inferred from (1) the packaging, labeling, and storage of the controlled substance, (2) the defendant's activities, (3) the quantity found, and (4) the presence of cash or drug paraphernalia." Nettles, 170 N.C. App. at 106, 612 S.E.2d at 176 (citations omitted).
Here, the State presented evidence that police observed what appeared to be a hand-to-hand drug transaction between defendant and another male, searched defendant's person and found individual rocks of crack cocaine weighing six and one-half grams and $377.00 in cash. Thus, we conclude that the State also presented sufficient evidence to establish that defendant intended to sell or deliver the cocaine. Accordingly, the trial court properly denied defendant's motion to dismiss the charge of possession with intent to sell or deliver cocaine.
For the foregoing reasons, we hold no error.
No error.
Judges ROBERT C. HUNTER, and STEELMAN concur.
Report per Rule 30(e).