DILLON, Judge.
Karen Jensen ("Plaintiff") appeals from the trial court's summary judgment and order denying her Rule 59 and 60 motions in favor of all Defendants, which includes the City of Charlotte, certain members of the Charlotte-Mecklenburg Police Department, the Chief of Police, and the Mecklenburg County Sheriff, along with certain deputies with the Mecklenburg County Sheriff's Office. For the foregoing reasons, we affirm the trial court's orders.
I. Background
Plaintiff filed a complaint against Defendants alleging twenty-three claims, including several tort claims and various claims based on 42 U.S.C. § 1983. Defendants filed their answers to Plaintiff's complaint.
Defendants filed motions for summary judgment, with supporting affidavits and documentation. Plaintiff filed an affidavit in response. Following a hearing on the matter, the trial court entered an order granting summary judgment in favor of all Defendants as to all claims and dismissing Plaintiff's complaint.
Sometime thereafter, Plaintiff filed a "motion to amend judgment or in the alternative for relief from [summary] judgment[,]" pursuant to Rules 59 and 60, which was denied by the trial court. Plaintiff filed notice of appeal from the trial court's orders.
II. Analysis
On appeal, Plaintiff contends that the trial court erred in granting summary judgment in favor of all Defendants and dismissing her complaint and in denying her Rule 59 and 60 motions. However, as a preliminary matter, we first address Defendants' motion to dismiss Plaintiff's appeal.
A. Motion to Dismiss
Defendants filed a joint motion to dismiss Plaintiff's appeal arguing that Plaintiff did not file notice of appeal within thirty days after entry of that judgment, and Plaintiff's Rule 59 and 60 motions did not toll the running of time to appeal because it was filed more than 10 days after entry of judgment.
For civil actions, a party must file and serve notice of appeal within thirty days after entry of judgment. N.C. R.App. P. 3(c)(1). We have determined that time for taking an appeal is tolled upon the filing of a Rule 59 motion, provided that the Rule 59 motion is timely filed, Middleton v. Middleton,98 N.C.App. 217, 220, 390 S.E.2d 453, 455 (1990), and, further, upon the timely filing of a Rule 59 motion, the full timefor taking an appeal is computed from the entry of the order granting or denying the Rule 59 motion. Id.N.C. R.App. P. 3(c)(3).[1]
A Rule 59 motion is timely if served no "later than 10 days after entry of the judgment." N.C. Gen.Stat. § 1A-1, Rule 59(e) (2010). However, Rule 58 provides that if the judgment is served by mail, a party moving pursuant to Rule 59 has three extra days-or thirteen days-to serve the motion. N.C. Gen.Stat. § 1A-1, Rule 58.
In this case, the summary judgment order served by mail on the pro sePlaintiff on 22 May 2014, thereby giving Plaintiff thirteen days-or through 4 June 2014-to serve her Rule 59 motion. Plaintiff beat this deadline by serving her Rule 59 motion on 3 June 2014. The trial court subsequently denied Plaintiff's Rule 59 motion by order entered 27 August 2014. Plaintiff filed her notice of appeal from this order on 22 September 2014, within thirty days after the order in accord with N.C. R.App. P. 3. Accordingly, Plaintiff's appeal is timely, and Defendants' motion to dismiss is denied.
B. Summary judgment
A motion for summary judgment is properly granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. N.C. Gen.Stat. § 1A-1, Rule 56(c).
Here, all of the individual Defendants are police officers with the Charlotte Mecklenburg Police Department or members of the Mecklenburg County Sheriff's Department. Plaintiff raised twenty-three claims against these Defendants in their official capacities and in their individual capacities, including tort claims for false imprisonment; negligence; negligent hiring and supervision; malicious prosecution; abuse of process; common law conspiracy; intentional inflection of emotional distress; negligent inflection of emotional distress; common law obstruction of justice; § 1983 claims; and claims for punitive damages. Defendants contend that summary judgment was appropriate because Plaintiff failed to forecast evidence to support her claims and her claims are barred by qualified immunity and the public duty doctrine. We agree.
1. State tort claims
As public officers, see Isenhour v. Hutto,350 N.C. 601, 604, 517 S.E.2d 121, 124 (1999), police officers and sheriff deputies are shielded from civil liability by qualified immunity "unless [they] engaged in discretionary actions which were allegedly: (1) corrupt; (2) malicious; (3) outside of and beyond the scope of his duties; (4) in bad faith; or (5) willful and deliberate." Reid v. Roberts,112 N.C.App. 222, 224, 435 S.E.2d 116, 119 (1993).
Plaintiff's tort claims are similar to the plaintiff's claims in Beeson v. Palombo,where
plaintiff filed a verified complaint against defendants, the City of New Bern and two of its employees on the New Bern Police Department in both their individual and official capacities, for false imprisonment, malicious prosecution, negligent infliction of emotional distress, and intentional infliction of emotional distress based upon defendants' alleged wrongful conduct in obtaining and executing arrest warrants against plaintiff for assault on a female.
220 N.C.App. 274, 275, 727 S.E.2d 343, 345 (2012). On appeal from denial of the defendant's motion for summary judgment, this Court further explained the "public official immunity[:]"
The public official immunity doctrine proscribes, among other things, suits to prevent a State officer or Commission from performing official duties or to control the exercise of judgment on the part of State officers or agencies....
As long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, ... keeps within the scope of his official authority, and acts without malice or corruption, he is protected from liability.
The exceptions to official immunity have expanded over the years, with bad faith and willful and deliberate conduct now operating as additional common law bases for liability.
The official immunity doctrine is deceptively simple. Actual prosecution of a tort claim against a public official, though, reveals the complex nature of the doctrine. The tort must arise from some action taken while the tortfeasor-public official is acting under color of state authority. The complainor must decide whether to sue the public official in his official capacity, in his personal/individual capacity, or both. Assuming a plaintiff asserts a well-pleaded claim against the public officer in both official and individual capacities, the doctrine of governmental (or official) immunity interposes several barriers to liability.
....
... [W]hile named defendants may be shielded from liability in their official capacities, they remain personally liable for any actions which may have been corrupt, malicious or perpetrated outside and beyond the scope of official duties. Official immunity does not extend to the individuals acting in an official capacity who in disregard of law invade or threaten to invade the personal or property rights of a citizen even though they assume to act under the authority of the State.
Id.at 276-77, 727 S.E.2d at 346 (quoting Epps v. Duke Univ.,122 N.C.App. 198, 203-04, 468 S.E.2d 846, 850-51 (1996) ). After noting that the plaintiff had "allege[d] malicious motive and conduct on the part of defendants" both in their official and individual capacities, it further noted that the "complaint [was] rife with language alleging the maliciousness of defendants Palombo and McKenzie, as plaintiff claims they acted purposely, intentionally, knowingly, maliciously, willfully, unlawfully, without just cause, and without probable cause." Id.at 277, 727 S.E.2d at 346. However, upon careful inspection, this Court noted that "both plaintiff's complaint and brief makes it clear that plaintiff is actually only challenging defendant McKenzie's choice to seek and have arrest warrants issued[,]" and "[a]ll of plaintiff's claims center on facts which plaintiff alleges demonstrate that the arrest warrants were obtained without probable cause." Id.The Court went on to determine that probable cause existed for issuance of the arrest warrants and defendants were shielded by public official immunity, holding that "as plaintiff has not demonstrated any 'deliberate falsehood or ... reckless disregard' by defendants in seeking the arrest warrants, defendants are shielded by immunity." Id.at 285, 727 S.E.2d at 351.
Here, Plaintiff alleges that all individual Defendants' acts were knowing, intentional, malicious, reckless, unlawful, without just cause, and without probable cause. However, both Plaintiff's brief and the complaint make it clear that Plaintiff is actually challenging three related events that the individual Defendants participated in their official capacities: (1) Defendant Officer Jessamy's decision to seek an arrest warrant against Plaintiff, which resulted in the magistrate's issuing a warrant for Plaintiff's arrest; (2) the individual deputy sheriffs' decision to execute that warrant, and arrested her; and (3) Plaintiff's subsequent treatment while detained in the Mecklenburg County jail. As all of Plaintiff's claims stem from her allegations against Defendant Officer Jessamy, we first turn to determine whether probable cause existed for him to cause the arrest warrant to be issued against Plaintiff.
a. Probable cause to seek arrest
Although not specifically stated by Plaintiff in her brief, it appears that Plaintiff is arguing that her tort claims for false imprisonment, negligence, malicious prosecution, abuse of process, common law conspiracy, and common law obstruction of justice against Officer Jessamy and the other individual police officers were improperly dismissed because these individuals were not protected by qualified immunity because probable cause did not exist for her arrest.
Probable cause is a question of law and fact, but where the facts are admitted or established, the existence of probable cause is a question of law. Cook v. Lanier,267 N.C. 166, 171, 147 S.E.2d 910, 914 (1966).
The Fourth Amendment requirement that no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing persons or things to be seized, applies to arrest warrants as well as to search warrants. The judicial officer issuing such warrant must be supplied with sufficient information to support an independent judgment that there is probable cause for issuing the arrest warrant. The same probable cause standards under the Fourth and Fourteenth Amendments apply to both federal and state warrants.
The standard applied to determinations of probable cause is not a technical one.... Probable cause is a flexible, common-sense standard. It does not demand any showing that such a belief be correct or more likely true than false. A practical, non-technical probability is all that is required. At minimum, a supporting affidavit for an arrest warrant must show enough for a reasonable person to conclude that an offense has been committed and that the person to be arrested was the perpetrator.
...
Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. Probable cause for an arrest has been defined to be a reasonable ground of suspicion, supported by circumstances strong in themselves to warrant a cautious [person] in believing the accused to be guilty. The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances.
... Probable cause for an arrest warrant is presumed valid unless [the] plaintiff presents allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.
Beeson v. Palombo,--- N.C.App. ----, ----, 727 S.E.2d 343, 347-48 (2012) (footnote and marks omitted). A defendant's allegations of negligence or innocent mistake are insufficient to rebut probable cause for a warrant. See Cox v. Roach,--- N.C.App. ----, ----, 723 S.E.2d 340, 348 (2012).
Under North Carolina law
[i]t is unlawful for an individual who is not seeking public safety assistance, is not providing 911 service, or is not responding to a 911 call to access or attempt to access the 911 system for a purpose other than an emergency communication. A person who knowingly violates this section commits a Class 3 misdemeanor.
N.C. Gen.Stat. § 14-111.4 (2010).
We have carefully reviewed the evidence, and hold that Officer Jessamy had probable cause to support the issuance of an arrest warrant for this offense against Plaintiff. Specifically, for example, there was evidence that Plaintiff had made a number of 911 calls to report crimes, though investigating officers found no evidence of any crime being committed. On the day in question in the late night hours of 6 July 2010 and the early morning hours of 7 July 2010, Officer Jessamy was dispatched to Plaintiff's residence based on an emergency call from Plaintiff. Upon arrival at the scene, Plaintiff became "belligerent towards [him] and the other officer" as she had done on prior occasions and advised him that her neighbor "was standing outside in the dark waiting for her to arrive home and that he was in violation of his 50(c) [civil] order." On previous calls to Plaintiff's residence, "[he] had explained to [Plaintiff] that police officers are not able to enforce 50(c) restraining orders, that the violation of a 50(c) restraining order was not a crime, and to please only call the police if there was an actual crime being committed." On this night, Officer Jessamy did not observe the neighbor committing any crime and "again advised [Plaintiff] to not call for police services unless an actual crime was being committed[.]" Plaintiff continued acting "belligerent towards" him and the other officer and she asked to see their supervisor. Officer Jessamy contacted his shift supervisor Sargent Elliot, who upon arriving at the scene advised Officer Jessamy and the other officer to "clear the scene." Before he left though, Officer Jessamy observed Plaintiff making a phone call and, upon being asked, she informed him that "she was speaking to a dispatcher." Officer Jessamy then went back to the Division office, and, upon observing the records of the chronologies for calls of service that Plaintiff had made in the weeks and months prior, he prepared an affidavit for Plaintiff's arrest for misuse of the 911 system. Officer Jessamy stated that he had probable cause to believe that Plaintiff had violated this statute because (1) over a matter of weeks, he had personally responded to multiple calls for service by Plaintiff regarding her neighbors; (2) he had advised her multiple times not to call 911 regarding enforcement of civil orders and non-criminal activity; and (3) she was talking to dispatch again before he left the scene. Officer Jessamy took the affidavit to the magistrate, who issued a warrant for Ms. Jensen's arrest.[2]
Plaintiff's rebuttal evidence only tends to show that she may have had some good faith reason to make the emergency calls. Plaintiff's affidavit states that in fact on the night in question she called 311, not 911 to report that her neighbor was laying "in wait for [her] outside in the dark[.]" It states further that "[u]pon information and belief" her neighbor was hiding behind a camper on his property near their adjoining property lines, and was waiting for her to get home to threaten her physically and scream "obscenities" at her. However, even viewing the evidence in the light most favorable to Plaintiff, we hold that applying the "flexible, common-sense standard [,]" Officer Jessamy had probable cause to believe that Plaintiff had committed the crime of abuse of the 911 system. Plaintiff's rebuttal evidence at best shows that she believed that her neighbor mightcommit a crime at some point. As Officer Jessamy stated, he saw no criminal activity when he arrived. Also, based on Officer Jessamy's and Lieutenant Stahnke's statements in their affidavits that an officer's information regarding the nature of a call would be limited to what dispatch told him and he could reasonably believe that he was responding to a call to 911. Therefore, her statements regarding calling 311, rather than 911 amounts to an "innocent mistake" by Officer Jessamy, which is insufficient to rebut probable cause for a warrant. See Cox v. Roach,---N.C.App. at ----, 723 S.E.2d at 348. Thus, the warrant was valid along with Plaintiff's subsequent arrest. Plaintiff has not forecast any evidence demonstrating any "deliberate falsehood or ... reckless disregard" by Defendants in seeking the arrest warrant, and therefore, the individual Defendants are shielded by qualified immunity and the trial court properly dismissed the claims against the individual police officer Defendants both in their individual and official capacities.
b. Plaintiff's arrest
Although not specifically stated by Plaintiff in her brief, it appears that the allegations in her complaint regarding her arrest are related to her claims for false imprisonment, negligence, malicious prosecution, abuse of process, common law conspiracy, and common law obstruction of justice against the individual Sheriff Deputy Defendants, including deputies "A. Conner" and "G. Coble" that executed the arrest warrant. However, as determined above, the warrant for Plaintiff's arrest was valid and supported by probable cause. N.C. Gen.Stat. § 15A-401(a)(1) (2013) states that "[a]n officer having a warrant for arrest in his possession may arrest the person named or described therein at any time and at any place within the officer's territorial jurisdiction." Subsection (e)(1) also states that an officer may "enter private premises ... to effect an arrest when" he is in possession of the warrant and "has given, or made reasonable effort to give, notice of his authority and purpose to an occupant thereof[.]" Id.Subsection (e)(2) states the an officer "may use force to enter the premises or vehicle if he reasonably believes that admittance is being denied or unreasonably delayed[.]" Id.In her affidavit, Plaintiff makes no mention of the arrest, but states that Officer Jessamy made a false affidavit which caused the warrant and arrest. Therefore, pursuant to N.C. Gen.Stat. § 15A-401, deputies could force entry to execute the valid arrest warrant against Plaintiff and Plaintiff has not forecast any evidence demonstrating any "deliberate falsehood or ... reckless disregard" by the individual sheriff deputy Defendants in executing the arrest warrant. Accordingly, the individual deputy sheriffs Defendants are shielded from liability from these claims by qualified immunity and the trial court properly dismissed the claims against the individual sheriff deputy Defendants that executed the arrest warrant, both in their individual and official capacities.[3]
c. Plaintiff's detention in the Mecklenburg County Jail
Although not specifically stated by Plaintiff in her brief, it appears that her claims for false imprisonment, intentional inflection of emotional distress, and negligent inflection of emotional distress are against the Defendant Deputy Sheriffs, including "Deputy Durant[,]" "Deputy Horn [,]" "Deputy Pillow[,]" "Deputy Williams[,]" and unnamed employee "John Doe [,]" for acts committed during her time after arrest when she was confined in the Mecklenburg County jail.
False imprisonment has been defined as "the illegal restraint of a person against his will." Marlowe v. Piner,119 N.C.App. 125, 129, 458 S.E.2d 220, 223 (1995). A restraint is illegal if it is unlawful or not consented to. Id.Specifically, a warrantless arrest without probable cause lacks legal authority and is therefore unlawful. State v. Zuniga,312 N.C. 251, 259, 322 S.E.2d 140, 145 (1984). "A false arrest is an arrest without legal authority and is one means of committing a false imprisonment." Marlowe,119 N.C.App. at 129, 458 S.E.2d at 223. However, as determined above, probable cause existed to arrest Plaintiff and therefore, the sheriff deputies' restraint of Plaintiff in executing that arrest warrant was also valid. These claims were properly dismissed.
Severe emotional distress is an essential element for both intentional infliction of emotional distress, see Holloway v. Wachovia Bank & Trust Co.,N.A., 339 N.C. 338, 351, 452 S.E.2d 233, 240 (1994), and for negligent infliction of emotional distress, see Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.,327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990). The severe emotional distress element has been described by our Supreme Court as:
any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so.
Holloway,339 N.C. at 354-55, 452 S.E.2d at 243.
Here, the individual sheriff deputy Defendants contended that summary judgment was appropriate for the NIED and IIED claims because Plaintiff failed to put forth any medical evidence to establish "emotional distress[,]" an essential element of both claims. Plaintiff counters in her brief and in a motion to amend the record on appeal that the trial court erred by failing to take into consideration discovery motions and documentation which included her medical records to support these claims. However, these discovery documents only show that Plaintiff refused to produce her medical records in response to Defendants' discovery requests. Although "[p]roof of 'severe emotional distress' does not necessarily require medical evidence or testimony[,]" which could include relevant testimony from other witnesses regarding the plaintiff's severe emotional distress, "appellate decisions have consistently upheld dismissal of NIED and similar claims, where a plaintiff fails to produce any real evidence of severe emotional distress." Pacheco v. Rogers & Breece, Inc.,157 N.C.App. 445, 450, 579 S.E.2d 505, 508 (2003). After reviewing these documents, they show that Plaintiff failed to produce medical documents or any other evidence to support her claims for IIED and NIED. Accordingly, we deny Plaintiff's request to amend the record to include these discovery requests and responses and hold that the trial court properly dismissed these claims against the individual sheriff deputy Defendants, both in their individual and official capacities.
d. Other tort claims
It also appears that Plaintiff also alleged claims of negligent hiring and supervision, malicious prosecution, abuse of process, common law conspiracy, and common law obstruction of justice against the City, the Defendant Sheriff, and police supervisors. However, Plaintiff abandoned these claims by failing to raise any legal argument in support of them in her brief on appeal. SeeN.C. R.App. P. 28(a) (2015) ("Issues not presented and discussed in a party's brief are deemed abandoned."). Plaintiff argues in her reply brief that she did preserve her "supervisory liability" claims for our review by stating certain facts in her initial brief. However, a summation in a fact section is not a legal argument before this Court, and likewise as to any factual summation in an affidavit. We have discretion to dismiss arguments that are not supported by legal authority. See State v. Locklear,180 N.C.App. 115, 119, 636 S.E.2d 284, 287 (2006) ("As [the party] fails to cite any legal authority in support of [this] argument, that argument may be deemed abandoned.") Accordingly, these claims are dismissed.
Plaintiff also argues that the trial court erred in not considering the allegations in her complaint after she made a statement in her affidavit verifying the factual allegations in her complaint. A verified complaint "may be treated as an affidavit if it (1) is made on personal knowledge, (2) sets forth such facts as would be admissible in evidence, and (3) shows affirmatively that the affiant is competent to testify to the matters stated therein." Page v. Sloan,281 N.C. 697, 705, 190 S.E.2d 189, 194 (1972). Plaintiff's generalized arguments that summary judgment was inappropriate because there were "genuine issues of fact" raised by her affidavit and now "verified" complaint are insufficient to preserve the issue, given her omission of any specific argument to support them in her brief. Accordingly, Plaintiff's argument is overruled.
Plaintiff also argues that the trial court erred in dismissing these claims in summary judgment based on qualified immunity, contending that this issue was resolved when Defendants' Rule 12(b)(6) motion to dismiss was denied some time before the summary judgment hearing and, therefore, it was improper for the trial court to overrule the prior trial court's ruling. However, we have stated that a ruling on "a previous motion to dismiss made under N.C. Gen.Stat. § 1A-1, Rule 12(b)(6)... does not prevent the trial court from granting a subsequent motion for summary judgment." Rhue v. Pace,165 N.C.App. 423, 426, 598 S.E.2d 662, 664-65 (2004). Our Court has held that "[w]hile one superior court judge may not overrule another, [a motion for summary judgment and a motion to dismiss pursuant to Rule 12(b)(6) ] do not present the same [legal] question." Barbour v. Little,37 N.C.App. 686, 692, 247 S.E.2d 252, 255 (1978). Accordingly, Plaintiff's argument is overruled.
Plaintiff also argues that summary judgment was inappropriate because rulings on discovery motions were still pending and the parties were still conducting discovery. However, a defending party may move for summary judgment at any time during discovery. SeeN.C. Gen.Stat. § 1A-1, Rule 56(b). Here, Defendants were entitled to summary judgment based on the affirmative defense of qualified immunity; Defendants' forecast of evidence showed that Officer Jessamy had probable cause to create an affidavit in support of an arrest warrant against Plaintiff for abuse of the 911 system; and Plaintiff failed to forecast evidence in support of her claims for IIED and NIED. See Glenn-Robinson,140 N.C.App. at 611, 538 S.E .2d at 607. Plaintiff's arguments are overruled.
2. § 1983 claims
Plaintiff raised 42 U.S.C § 1983 claims against all Defendants based on a claim for false arrest; violation of her first amendment right to free speech; violation of her fourth amendment search and seizure rights; violation of her right against excessive force; failure to train and enact polices and customs; retaliation; supervisory liability; abuse of process; fourteenth amendment substantive and procedural due process; and equal protection.
Section 1983 provides in part:
Every person who, under color of any statute, ordinance, regulation, custom or usage of [the United States], subjects ... any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....
42 U.S.C. § 1983. "The defense of qualified immunity shields government officials from personal liability under § 1983 insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Toomer v. Garrett,155 N.C.App. 462, 473, 574 S.E.2d 76, 86 (2002) (marks omitted). "In ruling on the defense of qualified immunity we must: (1) identify the specific right allegedly violated; (2) determine whether the right allegedly violated was clearly established at the time of the violation; and (3) if the right was clearly established, determine whether a reasonable person in the officer's position would have known that his actions violated that right." Glenn-Robinson v. Acker,140 N.C.App. at 620, 538 S.E.2d at 612 "Thus, a police officer is not liable even if he violated a plaintiff's rights, if those rights were not clearly established at the time, or if a reasonable person in the officer's position would have thought his actions were consistent with established law." Rogerson v. Fitzpatrick,170 N.C.App. 387, 390, 612 S.E.2d 390, 392 (2005). The first two determinations are questions of law for the court and should be decided at the summary judgment stage. Pritchett v. Alford,973 F.2d 307, 312-13 (4th Cir.1992) ; Lee v. Greene,114 N.C.App. 580, 585, 442 S.E.2d 547, 550 (1994). However, "the third [determination] ... requires [the factfinder to make] factual determinations [concerning] disputed aspects of the officer[s'] conduct." Greene,114 N.C.App. at 585, 442 S.E.2d at 550.
a. False arrest and Fourth Amendment, search and seizure violation
As to Plaintiff's alleged Fourth Amendment violation and false arrest claims, we have consistently held that a person's right to be free from unconstitutional arrests warrant legal protection. "The Fourth Amendment prohibits a police officer from arresting a citizen except upon probable cause." Glenn-Robinson v. Acker,140 N.C.App. at 615, 538 S.E.2d at 609. "Thus, if probable cause to arrest plaintiff was not present in the case at bar, the arrest was unlawful and violated [plaintiff's] Fourth Amendment right to be free from unlawful seizures." Id.(marks omitted). Unquestionably, a police officer may be held liable for an unconstitutional arrest made without probable cause in violation of the Fourth Amendment to the United States Constitution. See Malley v. Briggs,475 U.S. 335, 89 L.Ed.2d 271 (1986). In determining whether a constitutional right not to be arrested under particular circumstances was "clearly established," we must identify both "the facts known to the arresting officer and the contours of the offense asserted as the justification for the arrest ." Pritchett,973 F.2d at 314. The right is clearly established if the officers lacked probable cause "on either or both the factual knowledge or legal understanding components of the equation." Id.As determined above, probable cause existed to arrest Plaintiff and, accordingly, the trial court properly dismissed these claims against the individual Defendants.
b. Other § 1983 claims
As stated above, Plaintiff also made § 1983 claims against all Defendant based on violations of her First Amendment right to free speech; violation of her right against excessive force; failure to train and enact polices and customs; retaliation; supervisory liability; abuse of process; fourteenth amendment substantive and procedural due process; and equal protection. However, Plaintiff failed to raise any specific arguments in her brief in support of these claims and therefore, they are abandoned. SeeN.C.R.App. P. 28(a).
B. Rules 59 and 60 motions
Plaintiff argues that the trial court abused its discretion in denying her motion to amend the judgment pursuant to Rule 59(a)(1) an "irregularity [that] ... prevented [her] from having a fair trial" and (8) based on an "error in law" or grant relief from the judgment pursuant to Rule 60 because she is a pro selitigant, the trial court did not examine her verified complaint, and there were pending discovery motions when the summary judgment ruling was made.
Generally, a the trial court's Rule 59 decision is reviewed for an abuse of discretion. Bodie Island Beach Club Ass'n, Inc. v. Wray,---N.C.App. ----, ----, 716 S.E.2d 67, 76-77 (2011). However, where the Rule 59 motion involves a question of law or legal inference our standard of review is de novo. Id.
We have recognized the difficulties of conducting a civil suit as a pro selitigant but our Courts have consistently declined to treat pro selitigants differently from those represented. Bledsoe v. County of Wilkes,135 N.C.App. 124, 125, 519 S.E.2d 316, 317 (1999) ; see also Strauss v. Hunt,140 N.C.App. 345, 348-49, 536 S.E.2d 636, 639 (2000). Plaintiff failed to raise anything in support of her Rule 59 and 60 motions beyond repeating the same generalized arguments she raised in support of reversal of the trial court's summary judgment order. As discussed above, those arguments were found to be without merit in the above analysis. Accordingly, we find no error in the denial of these motions. For the foregoing reasons, we affirm the trial court's order.
AFFIRMED.
Judges CALABRIA and ELMORE, concur.
Report per Rule 30(e).
Opinion
Appeal by Plaintiff from orders entered 22 May 2014 and 27 August 2014 by Judge Lisa C. Bell in Mecklenburg County Superior Court. Heard in the Court of Appeals 20 May 2015.

It is well established that a motion pursuant to Rule 60 does not toll the time for taking appeal. Wallis v. Cambron, 194 N.C.App. 190, 193, 670 S.E.2d 239, 241 (2008).

Included with his affidavit were copies of the event chronologies for calls of service to Plaintiff's residence, which showed calls to 911 from Plaintiff from April 2010 until the night in question in 6 June 2010.

Since we determined that the individual Defendant officers and sheriff deputies are immune from civil liability based on "qualified immunity" we need not address Defendants' alternative theory based on the public duty doctrine.