STATE OF NORTH CAROLINA v. HENRY LEE HARRIS

No. 15

(Filed 30 July 1971)

**Arrest and Bail § 3; Searches and Seizures § 1— arrest without warrant — probable cause — search of the person**

> A police officer had probable cause to arrest defendant without a warrant for the felonies of breaking and entering and larceny after defendant went to a place in the woods where stolen TV's and other goods had been concealed, looked around, and then retraced his steps out of the woods; consequently, the search of the defendant following his arrest was lawful. G.S. 15-41(2).

APPEAL by defendant under G.S. 7A-30(1) from the decision of the Court of Appeals, reported in 9 N.C. App. 649, 177 S.E. 2d 445.

Upon his trial before *Beal, J.,* at the 6 July 1970 Schedule D Criminal Session of MECKLENBURG, defendant was convicted of feloniously breaking and entering the dwelling of Arnold J. Gilleland (G.S. 14-54) and of felonious larceny therefrom (G.S. 14-72(b)(2)) on 13 March 1970. From a sentence of 7-10 years, he appealed to the Court of Appeals, which found no error in the trial.

Evidence for the State tended to show: About 3:00 p.m. on 13 March 1970 Arnold J. Gilleland locked his home at 1709 Pecan Avenue in Charlotte and left the premises. Returning about forty-five minutes later he discovered that the back door had been prized open and the house completely ransacked. Missing were two portable TV's, one radio, several guns, eight rings, cuff links, watches, a lady's beaded change purse containing $6.00-$7.00 in dimes, and a box of old coins, among which was a 1900 silver dollar, an 1897 quarter, and a half-dollar which had a gold spot on it after being in a fire. The beaded purse was identified as State's Exhibit 1. The coins, along with a ring, were collected in an envelope and identified as Exhibit 2.

A chain-link fence, five feet tall and topped by several strands of barbed wire, enclosed the Gilleland back yard. From the back of this fence to Hawthorne Lane is a distance of 400-500 feet. In this area "there is a lot of brush . . . small pine trees. . . . [I]t is not a thickly wooded area."

About 4:00 p.m. Officer D. W. Kirkpatrick arrived to make an investigation. After observing that some strands of barbed wire on top of the back fence had been mashed down, he went outside the fence and found two sets of fresh footprints in a newly plowed field between two overgrown areas. He followed the footprints, which led back toward Hawthorne Junior High School, into the woods. Beneath a tree and some bushes, about fifty feet from Hawthorne Lane, he found the two portable TV's and radio. He then crossed Hawthorne Lane and searched the ball field area around the school. After finding nothing there he got Mr. Gilleland and took him to the spot where he had found the TV's and radio. Gilleland identified them as his property, and the officer returned Gilleland to his home.

About 6:00 Kirkpatrick parked his automobile behind a church near the ball field and watched the area where he had found the televisions and radio. "At this particular point there is only about 50 feet or so of woods and an open field and some more woods before you get to Mr. Gilleland's house. It's not solid woods all the way to his house." Shortly after dark, between 7:15 and 7:30 p.m., the officer saw two men walk across the ball field into the wooded area about 100 yards from where he was sitting. They followed a path for a short distance and then "went off the path to the point where the stuff had been left." After looking around they turned and retraced their steps. When the officer intercepted them at the school they began to run. The help for which he had radioed had not arrived; so he "couldn't get but one of them"—defendant. He informed defendant that he was "under arrest for investigation of housebreaking and larceny" and searched him.

Before Kirkpatrick was permitted to disclose the results of his search defendant moved "to suppress any evidence . . . found on this subject . . . and to *voir dire* examine the officer" with respect to it. In the absence of the jury, Officer Kirkpatrick gave evidence repetitious of that detailed above. In addition, he stated that on defendant he founded the beaded bag, State's Exhibit 1, which Mr. Gilleland had previously identified as being the one taken from his home. The bag was full of coins, including a 1900 silver dollar, an 1897 quarter, and a half-dollar with a gold spot on it. It also contained a ring. These contents, which Gilleland had also identified as his missing property, were State's Exhibit 2.

Kirkpatrick testified that at the time he took defendant into custody he had not seen him commit any crime; that he arrested him because he had left the path, gone directly to the spot where the televisions and radio had been, and, after looking around, he left the woods by the same route he had entered them.

Defendant did not testify upon the *voir dire*. Upon its conclusion Judge Beal found facts in accordance with Kirkpatrick's testimony and concluded therefrom, as a matter of law, that "said officer had reasonable grounds upon which to conduct a search of the person of the defendant at the time and place of the arrest." Thereupon he denied defendant's motion to suppress the evidence. The jury returned and State's Exhibits 1 and 2 were admitted into evidence.

Continuing his testimony before the jury, Kirkpatrick said: He found the beaded purse, State's Exhibit 1, in defendant's right front pocket. The coins, Exhibit No. 2, were inside the purse. After he had searched defendant at the scene of the arrest, he took him to the police station. There he signed warrants charging defendant with felonious breaking and entering and larceny. After the warrants were read to defendant and he was "informed of his rights," Kirkpatrick talked to him "about this thing." Defendant denied any knowledge of the housebreaking. He said he had found the coins and purse on the ball field—the area Kirkpatrick had searched before dark. All of the property stolen from the Gilleland home was not recovered; some of it is still missing.

Defendant, as a witness for himself, testified: He did not break into the Gilleland house on 13 March 1970. On that day he and his sister were at the home of his brother, Walter, from noon until 6:30 p.m., when he and Walter went to the Pegram Street Poolroom. There he "shot a couple of games" and left alone to go home by way of the Purple Penguin, five or six blocks from the poolroom. His route took him through the Hawthorne School yard, across Hawthorne Lane, and into the wooded area back of the Gilleland residence. A path through the woods provided a short cut to the Purple Penguin. "It's not what you would say heavily wooded right at the path, but as you enter, it gets, you know, thick." In defendant's opinion, after he entered the woods, the officer could not have seen

him from where he said he was sitting. When defendant went into the woods he found a black glove. In it was a little beaded pouch containing coins and a ring. He wasn't surprised to find the glove full of money in the woods—"maybe astonished." Before finding the glove he "didn't have nary a nickel." After acquiring this "little change," he decided to return to the pool-room and "maybe win." He was alone when he entered the woods and alone when he found the money. The only person he ever saw out there was Officer Kirkpatrick.

Defendant had previously been convicted of storebreaking and larceny, assault with a deadly weapon, carrying a concealed weapon, and assault upon an officer. He had been out of prison since 18 February 1970.

The testimony of defendant's sister and brother, Walter, corroborated that of defendant as to his whereabouts on 13 March 1970 from 12:30 p.m. until 6:30 p.m.

Defendant's motions for nonsuit, made at the close of the State's evidence and at the close of all the evidence, were denied.

*Attorney General Morgan, Assistant Attorney General Banks, and Staff Attorney Price for the State.*

*James J. Caldwell for defendant appellant.*

SHARP, Justice.

Defendant appeals upon the assumption that his warrant-less arrest was without probable cause; that the accompanying search of his person was therefore illegal and the fruits of the search inadmissible in evidence against him. He concedes, *ex necessitate,* that if State's Exhibits 1 and 2 were admissible the case was properly submitted to the jury. *State v. Bell,* 270 N.C. 25, 153 S.E. 2d 741.

"A police officer may search the person of one whom he has lawfully arrested as an incident of such arrest . . . . In the course of such search, the officer may lawfully take from the person arrested any property which such person has about him and which is connected with the crime charged or which may be required as evidence thereof. If such article is otherwise competent, it may properly be introduced in evidence by the State." *State v. Roberts,* 276 N.C. 98, 102, 171 S.E. 2d, 440,

443. *Accord, State v. Tippett*, 270 N.C. 588, 155 S.E. 2d 269. "Unquestionably, when a person is lawfully arrested, the police have the right, without a search warrant, to make a contemporaneous search of the person of the accused for weapons or for the fruits of or implements used to commit the crime." *Preston v. United States*, 376 U. S. 364, 367, 11 L. ed. 2d 777, 780, 84 S.Ct. 881, 883. *Accord, Chimel v. California*, 395 U.S. 752, 762-763, 23 L. ed. 2d 685, 694, 89 S.Ct. 2034, 2040.

Thus, the determinative question here is whether defendant was under lawful arrest at the time Officer Kirkpatrick searched him and found stolen property which had been recently removed from the Gilleland home. An arrest without warrant, except as authorized by statute, is illegal. *State v. McCloud*, 276 N.C. 518, 173 S.E. 2d 753. G.S. 15-41 (2) authorizes a peace officer without warrant to arrest a person "when the officer has reasonable ground to believe that the person to be arrested has committed a felony and will evade arrest if not immediately taken into custody."

Probable cause and "reasonable ground to believe" are substantially equivalent terms. "Probable cause for an arrest has been defined to be a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty. . . . To establish probable cause the evidence need not amount to proof of guilt, or even to prima facie evidence of guilt, but it must be such as would actuate a reasonable man acting in good faith. One does not have probable cause unless he has information of facts which, if submitted to a magistrate, would require the issuance of an arrest warrant." 5 Am. Jur. 2d *Arrests* § 44 (1962). "The existence of 'probable cause,' justifying an arrest without a warrant, is determined by factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. It is a pragmatic question to be determined in each case in the light of the particular circumstances and the particular offense involved." 5 Am. Jur. 2d, *supra*, § 48. *Accord, Brinegar v. United States*, 338 U.S. 160, 175, 93 L. ed. 1879, 1890, 69 S.Ct. 1302, 1310; *State v. Roberts, supra; Carson v. Doggett and Ward v. Doggett*, 231 N.C. 629, 58 S.E. 2d 609.

The facts, which Judge Beal found on *voir dire*, were amply supported by competent evidence in the record, and are binding

on us. *State v. Gray,* 268 N.C. 69, 150 S.E. 2d 1. They disclose that the following factual and practical considerations actuated Officer Kirkpatrick to arrest defendant: (1) Between 3:00 and 3:45 p.m. one or more persons feloniously broke and entered the Gilleland home and feloniously took and carried away therefrom two televisions, one radio, coins, jewelry, and other property of value. (2) Back of the Gilleland home, outside the fence, which appeared to have been "mashed down," Kirkpatrick found footprints which led into a wooded area. (3) He followed the tracks into the woods, searched the area, and found the two stolen TV's and the radio beneath a tree and some bushes. (4) About four hours later, shortly after dark, he saw defendant enter the area by a path which he followed a short distance and then went off the path to the point where Kirkpatrick had found the televisions and radio. (5) After looking around defendant retraced his steps, leaving the area the way he had come.

In our opinion these facts would warrant legal technicians, as well as reasonable and prudent laymen, in believing defendant to be guilty of the crimes of felonious breaking and entering and felonious larceny. We hold that Officer Kirkpatrick had reasonable ground upon which to believe that defendant had committed the two felonies for which he was subsequently indicted; that he would evade arrest if not immediately taken into custody; and that the search of his person (which produced positive evidence of his guilt) was legal. Defendant's contensions that the trial court erred in its findings of fact on *voir dire* and that the facts found do not support the court's conclusions are without merit. Defendant's other contentions, fully discussed in the opinion of the Court of Appeals, are likewise untenable.

In the decision of the Court of Appeals we find

No error.