STATE OF NORTH CAROLINA v. FREDDIE THOMPSON

No. 240A84

(Filed 27 February 1985)

**Searches and Seizures § 8; Kidnapping § 1.2— warrantless search—probable cause to arrest present**

    Defendant's motion to suppress evidence seized as a result of his unlawful arrest was properly denied where the officers who arrested defendant shortly after 10:00 a.m. knew that a nine-year-old female child had been missing since some time prior to 8:00 p.m. the previous evening; knew that she had last been seen heading away from her home with defendant, a man in his mid-twenties; knew that defendant had not been seen since he and the child were seen together on the previous evening; and knew that defendant had a prior history

———————

of assaults on females and of at least one sexual offense involving a child. The information possessed by the officers at the time they arrested defendant was sufficient to cause a reasonable person acting in good faith to believe that defendant was guilty of kidnapping. G.S. 15A-401(b)(2).

Justice VAUGHN did not participate in the consideration or decision of this case.

APPEAL by the defendant from judgments entered by *Judge D. Marsh McLelland* at the December 12, 1983 Criminal Session of Superior Court, ORANGE County.

The defendant was charged in separate bills of indictment with first degree sexual offense, first degree rape and second degree kidnapping. He entered a plea of not guilty to each charge. The jury found the defendant guilty of all of the offenses charged. By judgments entered December 15, 1983, the defendant was sentenced to life imprisonment for his conviction for first degree sexual offense, life imprisonment for his conviction for first degree rape, and nine years' imprisonment for his conviction for second degree kidnapping.

The defendant appealed his convictions for first degree sexual offense and first degree rape, and the resulting life sentences, to the Supreme Court as a matter of right. His motion to bypass the Court of Appeals on his appeal from his conviction and nine year prison sentence for second degree kidnapping was allowed on May 17, 1984. Heard in the Supreme Court December 11, 1984.

*Rufus L. Edmisten, Attorney General, by Harry H. Harkins, Jr., Assistant Attorney General, for the State.*

*Adam Stein, Appellate Defender, by David W. Dorey, Assistant Appellate Defender, for the defendant appellant.*

MITCHELL, Justice.

The controlling question on appeal is whether there was probable cause for the arrest of the defendant without a warrant at the time law enforcement officers took him into custody. We conclude that there was probable cause and that evidence seized as a result of his arrest was properly admitted at trial.

A complete review of the evidence presented at trial is unnecessary in resolving the issue presented on appeal. The evi-

dence at trial tended to show among other things that Linda Gattis left her home at approximately 6:30 p.m. on August 5, 1983 to go to a nearby neighborhood store. She left her nine-year-old daughter Stephanie playing at a neighborhood playground. While at the store, Ms. Gattis saw Wayne Small riding Stephanie's bicycle. When asked he told her that Freddie Thompson, the twenty-seven-year-old defendant in this case, had let him ride the bicycle. The defendant arrived at the store shortly thereafter, and Ms. Gattis told him to take the bicycle back to her house. The defendant indicated that he would do so and left the store.

When Ms. Gattis returned to her home a short while later, Wayne Small told her that Stephanie was with the defendant. Ms. Gattis went immediately to the playground and then to the home of the defendant's sister looking for Stephanie. When she did not find her daughter at either location, she returned to her home and reported the child's absence to the police. The police and Ms. Gattis continued to attempt to locate the child during the night of August 5 and the morning of Saturday, August 6, 1983. A police command post was set up in a parking lot in the neighborhood, and additional officers were called to duty to assist in the search for Stephanie.

On the morning of August 6, Stephanie returned home in the company of a neighbor. She was emotionally distraught and dirty and had blood on her clothing and leaves in her hair.

The child testified at trial that she met the defendant on August 5 as she was returning to her home from the playground. The defendant suggested that they go to his sister's home. Instead of going to the sister's home, they went down a path in the woods. When the defendant told her to undress, she ran but was overtaken by him. After he threatened her, she complied with his demands. He forced her to engage in the sexual acts charged in the bills of indictment against her will.

Medical testimony and physical and scientific evidence were introduced tending to corroborate the child's testimony. This evidence included a pair of jeans removed from the defendant after he was taken into custody which bore bloodstains of the same type as the victim's blood.

The defendant assigns as error the trial court's denial of his motion to suppress evidence seized from him as a result of his ar-

rest. In support of this assignment, he contends that there was no probable cause for arresting him without a warrant, and that any evidence seized as a result of his unlawful arrest could not be admitted against him at trial. We do not agree.

The trial court held a pretrial hearing on several of the defendant's motions including his motion to suppress evidence seized incident to his arrest. The evidence introduced at that hearing tended to show among other things that Chapel Hill Public Safety Officer Mark Porterfield was called at home on August 6, 1983 by Master Public Safety Officer Clark and told to report to a command post which had been set up in the parking lot of Hargraves Recreational Center. He arrived at the command post at about 9:45 a.m. Officer Clark informed Officer Porterfield of the investigation which was being conducted into the disappearance of a nine-year-old black female child. Clark told Porterfield that the child had last been seen on Roberson Street riding a bicycle in a northerly direction with Freddie Thompson. Porterfield was given pictures of the missing child and of Freddie Thompson. Clark told Porterfield that Thompson was a prior sex offender in his mid-twenties and gave Porterfield a detailed physical description of Thompson and of the clothes he had been wearing when last seen with the child. Porterfield then joined other public safety officers in a continuing door-to-door inquiry into the child's whereabouts.

At about 10:10 a.m., Porterfield saw the defendant riding a bicycle. He called out to the defendant and asked him if he was Freddie Thompson. The defendant said, "Yes." Porterfield told the defendant to stop because he needed to talk to him. After the defendant stopped the bicycle, Porterfield again asked if he was Freddie Thompson and received the same answer. Porterfield identified himself as a police officer and told the defendant that Stephanie Gattis was missing and had last been seen with the defendant. He asked the defendant if he knew her. The defendant said that he did not know the child.

Porterfield asked the defendant to accompany him to a nearby house. Porterfield asked a resident there to call the police and tell them that he needed assistance. While Porterfield and the defendant stood on the front porch, the defendant asked "what this was all about." Porterfield showed him a picture of Stephanie Gattis,

and the defendant told Porterfield that he had not seen her. "At this time, he was nervous, he was looking at his feet and shifting and asking again and again what was going on, and what was this all about." Porterfield told him again that the police were looking for Stephanie Gattis, and "he was supposed to have been seen with her the night before." The defendant again stated that he knew nothing.

A minute or two after the call was placed to the police department, Master Public Safety Officer Dave Hill and other officers arrived. Master Officer Hill had been given essentially the same information about the missing child and the defendant Thompson as that given to Porterfield. Additionally, Hill had been personally involved during the preceding four years in investigations into assaults by the defendant and at least one sex offense by him with a child. Hill knew the defendant personally. Hill testified that he felt that the police had probable cause to arrest the defendant for kidnapping at that time. Therefore, he ordered Porterfield "to handcuff him and take him to the Police Station, he was under arrest."

Police have the right, without a search warrant, to search a person for weapons or evidence of a crime if the person has been lawfully arrested. *Chimel v. California*, 395 U.S. 752, *reh. denied*, 396 U.S. 869 (1969); *State v. Harris*, 279 N.C. 307, 182 S.E. 2d 364 (1971). "The fact of a lawful arrest, standing alone, authorizes a search." *Michigan v. DeFillippo*, 443 U.S. 31, 35 (1979). Therefore, if the defendant in the present case was lawfully arrested, the items of evidence complained of were properly seized from him and later admitted into evidence at trial. *State v. Harris*, 279 N.C. 307, 182 S.E. 2d 364 (1971).

We have held that the question of whether an arrest warrant must be obtained in a given case is immaterial "in a constitutional sense" and that "state law alone determines the sanctions to be applied for failure to obtain an arrest warrant where one is required." *State v. Eubanks*, 283 N.C. 556, 560, 196 S.E. 2d 706, 709 (1973). We have also held, however, that an arrest without a warrant is illegal in North Carolina unless authorized by statute. *State v. Harris*, 279 N.C. 307, 182 S.E. 2d 364 (1971). Law enforcement officers are authorized by N.C.G.S. 15A-401(b)(2) to arrest any person when they have probable cause to believe that the

person has committed a felony. *In re Pinyatello*, 36 N.C. App. 542, 245 S.E. 2d 185 (1978). We have previously described "probable cause" in the following terms:

> Probable cause for an arrest has been defined as "a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty . . . . To establish probable cause the evidence need not amount to proof of guilt, or even to prima facie evidence of guilt, but it must be such as would actuate a reasonable man acting in good faith. One does not have probable cause unless he has information of facts which, if submitted to a magistrate, would require the issuance of an arrest warrant." 5 Am. Jur. 2d, Arrest § 44. The existence of probable cause so as to justify an arrest *without a warrant* "is determined by factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. It is a pragmatic question to be determined in each case in the light of the particular circumstances and the particular offense involved." 5 Am. Jur. 2d, Arrest § 48. *Accord, State v. Phifer*, 297 N.C. 216, 254 S.E. 2d 586 (1979); *State v. Harris*, 279 N.C. 307, 182 S.E. 2d 364 (1971); *Brinegar v. United States*, 338 U.S. 160, 93 L.Ed. 1879, 69 S.Ct. 1302 (1949).

*State v. Phillips*, 300 N.C. 678, 684, 268 S.E. 2d 452, 456 (1980).

At the time the officers arrested the defendant in the present case shortly after 10:00 a.m. on August 6, they knew that a nine-year-old female child had been missing since sometime prior to 8:00 p.m. the previous evening. They also knew that she had last been seen heading away from her home with the defendant, a man in his mid-twenties. They knew that the defendant had not been seen since he and the child were seen together on the previous evening. They were aware that the defendant had a prior history of assaults on females and of at least one sexual offense involving a child. Although it is not clear from the testimony at the *voir dire* hearing whether any of these offenses were the same as those which had led Master Officer Hill to investigate the defendant in prior sexual assault cases, it is clear that the officers knew of them.

The evidence at the *voir dire* hearing revealed that the information possessed by the officers at the time they arrested the defendant was sufficient to cause a reasonable person acting in good faith to believe that the defendant was guilty of kidnapping. Master Officer Hill had formed such a belief and acted upon it when he told Officer Porterfield to put the handcuffs on the defendant because he was under arrest.

We note that Officer Porterfield asked a Major Gold at a later point what the defendant was to be charged with and was told that he should be charged with contributing to the delinquency of a minor, a misdemeanor. We find this in no way determinative, however, as the arrest of the defendant was completed when he was placed in custody by Officer Porterfield on the order of Master Officer Hill. In any event, the record on appeal reflects that the defendant was formally charged by warrant and later by indictment for the felony of kidnapping and not for a misdemeanor.

The totality of the facts and circumstances known to the law enforcement officers at the time they arrested the defendant would have given probable cause for the issuance of an arrest warrant for the felony of kidnapping. It is immaterial that some of the information they possessed at that time might not have been competent in evidence at the defendant's trial. *Brinegar v. United States*, 338 U.S. 160 (1949); *State v. Phillips*, 300 N.C. 678, 268 S.E. 2d 452 (1980).

At the conclusion of the *voir dire* on the defendant's pretrial motion to suppress, the trial court determined that the officers had probable cause to arrest the defendant for kidnapping at the time they took him into custody. As previously indicated, the trial court's determination in this regard was fully supported by the evidence presented during the hearing. Since the defendant had been lawfully arrested at the time he was searched and the evidence complained of was seized, the trial court properly denied his motion to suppress that evidence.

The defendant received a fair trial free of prejudicial error.

No error.

Justice VAUGHN did not participate in the consideration or decision of this case.