IN THE SUPREME COURT OF NORTH CAROLINA

No. 95A22

Filed 20 October 2023

STATE OF NORTH CAROLINA

v.

JOANNA KAYE JULIUS

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 282 N.C. App. 189 (2022), finding no error after appeal from judgments and an order denying defendant's motion to suppress entered on 17 April 2019 by Judge J. Thomas Davis in Superior Court, McDowell County. Heard in the Supreme Court on 26 April 2023.

*Joshua H. Stein, Attorney General, by William Walton, Assistant Attorney General, for the State-appellee.*

*Glenn Gerding, Appellate Defender, by John F. Carella, Assistant Appellate Defender, for defendant-appellant.*

BERGER, Justice.

Following the denial of her motion to suppress, defendant was convicted of trafficking in methamphetamine, possession with intent to manufacture, sell, or deliver methamphetamine, and possession of methamphetamine. A divided panel of the Court of Appeals affirmed the trial court's denial of the motion to suppress and found no error in defendant's trial. Based upon a dissent in the Court of Appeals, the issues before this Court are (1) whether the search and subsequent seizure of

-1-

contraband comports with the Fourth Amendment, and (2) if it does not, whether such evidence must be suppressed. For the reasons stated below, we reverse the decision of the Court of Appeals and remand this matter to the trial court.

## I.    Background

Based upon the trial court's unchallenged findings of fact and testimony at the suppression hearing, on 20 May 2018, Trooper Justin Sanders of the North Carolina State Highway Patrol and Deputy Jesse Hicks of the McDowell County Sheriff's Office were dispatched to the scene of an automobile accident in McDowell County. Trooper Sanders was advised prior to arrival that the driver had fled the scene. Upon arrival, Trooper Sanders and Deputy Hicks observed a vehicle resting partially submerged in a ditch. Trooper Sanders and Deputy Hicks both testified that the vehicle could not have been driven out of the ditch and it ultimately had to be towed from the scene.

Defendant informed Trooper Sanders that she was a passenger in the vehicle, which was owned by her parents, but that someone she could only identify as Kyle had been driving. Witnesses confirmed that defendant was the passenger and that the driver fled on foot after stating that he could not remain at the scene because he had outstanding warrants against him.[1]

---

[1] There is no information in the record concerning the charges set forth in the outstanding warrants. Deputy Hicks testified at the suppression hearing that "Chris Taylor" later confirmed that there were outstanding warrants for Kyle's arrest. The transcript from the hearing on the motion to suppress contains no additional information as to the identity or employment of Chris Taylor. A transcript of defendant's trial shows that Chris Taylor was

Defendant provided Trooper Sanders with her identification and told Trooper Sanders that she did not know whether Kyle left any form of identification in the vehicle. Based on the information received to that point, Trooper Sanders testified that he was conducting an investigation for a hit-and-run.

Without obtaining consent or a search warrant, Trooper Sanders searched the vehicle for evidence of Kyle's identity. Trooper Sanders testified that he was "looking for Kyle's driver[']s license or ID" because he "needed a last name [of the driver]" to potentially prepare a wreck report. Upon locating a green and black Nike bag in the front passenger floorboard, Trooper Sanders looked inside the bag and discovered a black box the size of an electric razor case which was large enough to contain a driver's license. Trooper Sanders opened the black box and found scales, two cell phones, and two clear bags containing more than forty grams of methamphetamine. Defendant stated that the bag belonged to Kyle.

Trooper Sanders was unable to locate an identification for Kyle, and the search of the vehicle did not produce any additional evidence relating to the hit-and-run or other criminal activity. Based upon descriptions of Kyle provided by the witnesses, Deputy Hicks was subsequently able to determine that the driver was William Kyle Lytle.

---

a detective with the McDowell County Sheriff's Office. In addition, there was no evidence offered at the suppression hearing as to the offenses charged in the warrants.

As a result of the discovery of the contraband during the search of the vehicle, defendant was arrested and a pink backpack in her possession was searched. Trooper Sanders located several plastic bags containing a clear crystalline substance, a pistol, a glass pipe, and $1,785 in cash in defendant's bag.

Defendant was subsequently indicted for trafficking methamphetamine by possession, trafficking methamphetamine by transportation, possession with intent to manufacture, sell, or deliver a Schedule II controlled substance, possession of methamphetamine, and possession of drug paraphernalia. Before trial, defendant moved to suppress the evidence discovered at the scene, arguing that the search violated the Fourth Amendment.

Based upon the findings of fact above, the trial court concluded as a matter of law that because Kyle fled the scene of the accident and the officers did not know his identity:

> 4.   . . . It was reasonable for [Trooper] Sanders to conclude that the vehicle may contain evidence of the true identity of the driver, the cause of the collision, and/or the reason for the driver fleeing the scene, and he therefore had probable cause to search the vehicle for that evidence. Furthermore, Trooper Sanders had probable cause to arrest "Kyle" on suspicion that he had unserved orders for his arrest. As a result, Trooper . . . Sanders had legal authority to search the vehicle and every place within the vehicle where any form of identification for Kyle Lytle could be found. Trooper . . . Sanders' subsequent search of

the black and green Nike bag and the black box inside it were therefore constitutional searches. [2]

5. The discovery of what appeared to be methamphetamine and drug paraphernalia inside of the black and green Nike bag found in the passenger floorboard provided Trooper Sanders and Deputy Hicks with probable cause to arrest the defendant and search her pink backpack. The defendant had recently been an occupant of the vehicle wherein the contraband was discovered, and moreover she had recently occupied the seat near which it was found. Therefore there existed a fair probability that the controlled substances discovered were in the defendant's custody, care, or control, and also that the pink backpack she retained might contain further controlled substances or other paraphernalia.

After the trial court denied the motion to suppress, defendant's case came on for trial on 15 April 2019. A McDowell County jury found defendant guilty of trafficking in methamphetamine by possession and possession of methamphetamine with intent to manufacture, sell, or deliver. On 17 April 2019, defendant pleaded guilty to possession of methamphetamine, and pursuant to an agreement with the State, the possession of drug paraphernalia charge was dismissed. The trial court imposed a seventy to ninety-three month active sentence for trafficking in methamphetamine and a probationary sentence for the remaining convictions. Defendant timely appealed.

---

[2] We note that defendant correctly asserted that conclusion of law #4 contains both findings of fact and conclusions of law. However, even if the challenged portions were supported by competent evidence, this finding would not change our analysis.

At the Court of Appeals, defendant argued in part that the trial court erred in concluding that the warrantless search was supported by probable cause. Nevertheless, the majority affirmed the trial court's denial of defendant's motion to suppress and found no error in additional issues which are not before us in this appeal. *State v. Julius*, 282 N.C. App. 189, 194 (2022). In affirming the trial court's order, the majority relied primarily on the search incident to arrest exception to the warrant requirement. *Id.* at 192. The Court of Appeals also opined that the "[o]fficers had reasonable suspicion to search the vehicle" and that "the officers were justified in searching the wrecked vehicle to get it out of the ditch for an inventory [search] or for officer safety." *Id.* at 193. However, the opinion below only mentions these exceptions to the warrant requirement in a cursory fashion.

The dissent in the Court of Appeals disagreed with the majority's conclusion, reasoning that "the evidence and argument presented to the trial court did not establish probable cause for the warrantless search" of the vehicle and the search incident to arrest exception did not apply because Kyle was not arrested. *Id.* at 195, 197–98 (Inman, J., dissenting). Additionally, the dissent maintained that because "the vehicle was in a ditch and inoperable," the justification behind the automobile exception to the warrant requirement was nullified. *Id.* at 199. Reasoning that the theories of officer safety, inventory search, and search for other people did not apply, as the State did not produce evidence to support any justification for the warrantless search, the dissent concluded that all of the evidence should have been excluded

because the search and arrest of defendant stemmed from the initial illegal vehicle search.

Defendant appealed based upon the dissent in the Court of Appeals pursuant to N.C.G.S. § 7A-30. *See* N.C.G.S. § 7A-30(2) (2021).

## II. Standard of Review

We review a trial court's order on a motion to suppress to determine "whether the trial court's underlying findings of fact are supported by competent evidence and whether those factual findings in turn support the trial court's ultimate conclusions of law." *State v. Parisi*, 372 N.C. 639, 649 (2019) (cleaned up). "Findings of fact not challenged on appeal 'are deemed to be supported by competent evidence and are binding on appeal.'" *State v. Tripp*, 381 N.C. 617, 625 (2022) (quoting *State v. Biber*, 365 N.C. 162, 168 (2011)). The trial court's "[c]onclusions of law are reviewed de novo." *Biber*, 365 N.C. at 168.

## III. Analysis

The Fourth Amendment declares that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. "Searches conducted by governmental officials in the absence of a judicial warrant are presumptively unreasonable." *State v. Terrell*, 372 N.C. 657, 665 (2019) (cleaned up). However, because "the ultimate touchstone of the Fourth

Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006).

"When seeking to admit evidence discovered by way of a warrantless search in a criminal prosecution, the State bears the burden of establishing that the search falls under an exception to the warrant requirement." *Terrell*, 372 N.C. at 665 (cleaned up). It is "well established that the State bears the burden of proving the reasonableness of the warrantless search" and a court "cannot simply assume" that evidence exists when the State has not met its burden. *State v. Grady*, 372 N.C. 509, 543–44 (2019); *see also Doe v. Cooper*, 842 F.3d 833, 846 (4th Cir. 2016) ("[N]either anecdote, common sense, nor logic, in a vacuum, is sufficient to carry the State's burden of proof.").

Here, the Court of Appeals held that the search incident to arrest exception justified the warrantless search and merely noted without further explanation that the search still could have been justified as "an inventory [search] or for officer safety." *Julius*, 282 N.C. App. at 193. In contrast, the dissenting opinion stated that neither the search incident to arrest exception nor the automobile exception applied to the case at hand. *Id.* at 197–200 (Inman, J., dissenting in part and concurring in result only in part). We analyze these exceptions.

## A. Search Incident to Lawful Arrest Exception

When an individual is lawfully arrested, officers may search "the arrestee's person and the area within his immediate control" without first obtaining a warrant.

*Arizona v. Gant*, 556 U.S. 332, 339 (2009) (cleaned up). This exception to the warrant requirement, known as a "search incident to a lawful arrest . . . derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Id.* at 338.

Likewise, law enforcement "may search a vehicle incident to a recent occupant's arrest," but "only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id.* at 351. Vital to the proper application of this exception is the "possibility that an arrestee could reach into the area that law enforcement officers seek to search." *Id.* at 339. In fact, "[i]f there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply." *Id.*

This Court has recognized that "a search may be made before an actual arrest and still be justified as a search incident to arrest[ ] if . . . the arrest is made contemporaneously with the search." *State v. Brooks*, 337 N.C. 132, 145 (1994) (citing *Rawlings v. Kentucky,* 448 U.S. 98 (1980)). However, we agree with the Court of Appeals' previous holding that a search incident to arrest needs a lawful arrest to be valid. *See State v. Fisher*, 141 N.C. App. 448, 456 (2000) ("Because defendant was never arrested, the search of his vehicle was not justified as a search incident to a lawful arrest.").

In this case, the Court of Appeals' reasoning was based upon the search incident to lawful arrest exception, as applied in *State v. Wooten*, 34 N.C. App. 85 (1977). *Julius*, 282 N.C. App. at 192. In *Wooten*, the Court of Appeals held that:

> [W]here a search of a suspect's person occurs before instead of after formal arrest, such search can be equally justified as 'incident to the arrest' provided probable cause to arrest existed prior to the search and it is clear that the evidence seized was in no way necessary to establish the probable cause.

34 N.C. App. at 89. The *Wooten* Court reasoned that there was "no value in a rule which invalidates the search merely because it precedes actual arrest" and that a search incident to arrest is permissible due to "the need for immediate action to protect the arresting officer from the use of weapons and to prevent destruction of evidence of the crime." *Id.* at 89–90.

While the reasoning in *Wooten* was correct, although perhaps more akin to inevitable discovery, the Court of Appeals' application of *Wooten* in the opinion below was not. The Court of Appeals appears to have reasoned that because probable cause existed such that Kyle *could* have been arrested, the search incident to lawful arrest exception was applicable. *Julius*, 282 N.C. App. at 192–93. However, in light of well-established case law, this holding was erroneous.

First, the justifications supporting the search incident to lawful arrest exception did not exist because Kyle was not "within reaching distance" of the vehicle which Trooper Sanders sought to search because he had fled the scene and posed no threat of entering the vehicle. *See Gant*, 556 U.S. at 351. Additionally, the State

presented no evidence that the vehicle contained evidence of the crime of hit-and-run which would risk destruction by Kyle if not immediately seized. Therefore, it is not only imprudent but contrary to precedent to extend the search incident to lawful arrest exception to a situation in which the potential arrestee has fled the scene and cannot reach the vehicle.

Further, this Court has stated that a search may occur prior to the arrest of an individual only if the arrest "is made contemporaneously with the search." *Brooks*, 337 N.C. at 145. On the record before us, Deputy Hicks testified that "if I'm not mistaken, [Detective Taylor] took out a warrant for Joanna Julius and William Kyle Lytle." However, the State presented no evidence at the suppression hearing that Kyle was ever arrested, let alone arrested contemporaneously with the search of the vehicle. The fact that an arrest could have been made at a later time is not enough; to justify this exception an arrest must occur.

Moreover, but for the unlawful search of the vehicle, officers would not have had probable cause to search defendant's backpack nor to arrest her. *See Smith v. Ohio*, 494 U.S. 541 (1990). Here, defendant was a mere bystander amongst the witnesses at the scene. There was no evidence presented at the suppression hearing that the interior of the vehicle was accessible to defendant or that there were any safety concerns for the officers. *See Gant*, 556 U.S. at 351. Therefore, relying on defendant's arrest to justify this exception is equally unavailing, as the exception first requires a lawful arrest.

Thus, the search incident to lawful arrest exception is inapplicable to the case at hand.

## B. Automobile Exception

Both the dissent below and defendant on appeal contend that the search here cannot be justified by the automobile exception to the warrant requirement. Specifically, defendant argues that the automobile exception applies only to the extent "the nature of the automobile creates an exigency making a warrant, otherwise required by the Fourth Amendment, impracticable."

Under the automobile exception, law enforcement may search a vehicle without a warrant "[w]hen the[ ] justifications for the automobile exception come into play" and law enforcement has "probable cause to do so." *Collins v. Virginia*, 138 S. Ct. 1663, 1670 (2018) (cleaned up). Essential to the existence and proper application of this exception are two basic principles: first, the "inherent mobility of motor vehicles," and second, the "decreased expectation of privacy" which an individual has in a motor vehicle due to the extensive regulations imposed on vehicles by the state. *State v. Isleib*, 319 N.C. 634, 637 (1987); *see also United States v. Ross*, 456 U.S. 798 (1982).

Mobility of the vehicle is a fundamental prerequisite to the application of the automobile exception. *See Collins*, 138 S. Ct. at 1669 ("The 'ready mobility' of vehicles served as the core justification for the automobile exception for many years."). This Court has opined that "the inherent mobility of the automobile is itself the exigency."

*Isleib*, 319 N.C. at 639. Further, the Supreme Court of the United States has elaborated that it is "the ready mobility of the automobile" which distinguishes it from the higher degree of protection afforded to "stationary structures." *California v. Carney*, 471 U.S. 386, 390 (1985). It follows then that a valid application of the automobile exception requires that the vehicle must be in a condition in which ready use is possible.

In the present case, the testimony of the State's witnesses established that defendant's vehicle was immobile at the time of the search due to the accident, wholly negating the mobility requirement underlying the automobile exception.[3] The vehicle was "down in a ditch" and partially submerged in water, and both Trooper Sanders and Deputy Hicks testified that the vehicle could not have been driven from the scene. In fact, Deputy Hicks testified that he called a tow truck to remove the vehicle from the ditch. Thus, because the record demonstrates that the vehicle was immobile, an exigency did not exist and the automobile exception does not apply.

**C. Other Exceptions to the Warrant Requirement**

The Court of Appeals further suggested that the search of the vehicle may have been justified as "an inventory [search] or for officer safety," yet failed to elaborate on how these exceptions might be applicable given the State's evidence in the case. *Julius*, 282 N.C. App. at 193. For example, both Trooper Sanders and Deputy Hicks

---

[3] Although not before us, we note that there may be a distinction between immobile and inoperable when reviewing automobile exception cases.

testified that their agencies had policies in place to inventory impounded vehicles, but there is no testimony that such a search was attempted or completed. In addition, even though a firearm was recovered, no testimony was elicited regarding officer safety concerns.

Although the evidence here aligns closely with several recognized exceptions to the warrant requirement, the State did not meet its burden because the evidence simply falls short in certain respects. Absent such evidence in the record demonstrating the existence of factors which would have justified the warrantless intrusion, the entry into the vehicle and subsequent search cannot be justified under Fourth Amendment jurisprudence.

**D. Exclusionary Rule**

Defendant next argues that because the search violated the Fourth Amendment, the exclusionary rule requires suppression of the seized evidence.[4] We disagree that exclusion is mandated by the text of the Fourth Amendment or Supreme Court precedent.

Once a court determines that an illegal search has occurred, it must then analyze whether exclusion of the evidence seized is appropriate. *See Hudson v. Michigan*, 547 U.S. 586, 591 (2006). Although courts have often reflexively suppressed evidence obtained in violation of the United States Constitution, "the governments' use of evidence obtained in violation of the Fourth Amendment does

---

[4] Defendant did not argue that the search violated the North Carolina Constitution.

not itself violate the Constitution." *Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 362 (1998). In fact, "whether the exclusionary rule's remedy is appropriate in a particular context has long been regarded as an issue separate from the question of whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct." *Arizona v. Evans*, 514 U.S. 1, 10 (1995) (quoting *Illinois v. Gates*, 462 U.S. 213, 223 (1983)).

There is no express provision in the United States Constitution that demands evidence obtained in violation of the Fourth Amendment be excluded. *See Davis v. United States*, 564 U.S. 229, 236 (2011). To the contrary, the exclusionary "rule is prudential rather than constitutionally mandated." *Pa. Bd. of Prob. & Parole*, 524 U.S. at 363. Importantly, the Supreme Court of the United States has "rejected indiscriminate application of the rule," because suppression of evidence should "always be[ ] our last resort, not our first impulse." *Hudson*, 547 U.S. at 591 (cleaned up).

"[T]he exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence" by law enforcement. *Herring v. United States*, 555 U.S. 135, 144 (2009). The Supreme Court of the United States has emphasized that the exclusionary rule should only be applied in cases "where it results in appreciable deterrence" and where "the benefits of deterrence . . . outweigh the costs." *Id.* at 141 (cleaned up); *see also Hudson*, 547 U.S. at 591 ("[The exclusionary rule is] applicable only where its remedial objectives

are thought most efficaciously served—that is, where its deterrence benefits outweigh its substantial social costs.").

In essence, this "cost-benefit analysis . . . [focuses on] the flagrancy of police misconduct," *Davis*, 564 U.S. at 238 (cleaned up), as "police conduct must be sufficiently deliberate that exclusion can meaningfully deter it[,]" *Herring*, 555 U.S. at 144. Application of the exclusionary rule where there is no "corresponding societal or constitutional gain" only serves to "punish the public by impeding the truth-finding function" of the courts, thus "diminish[ing] the integrity of the judicial branch." *State v. Carter*, 322 N.C. 709, 729–30 (Mitchell, J., dissenting). Ultimately, "unless evidence was obtained by sufficiently deliberate and sufficiently culpable police misconduct, '[r]esort to the massive remedy of suppressing evidence of guilt is unjustified.' " *State v. Burch*, 2021 WI 68, ¶ 21, 398 Wis. 2d 1, 961 N.W.2d 314 (alteration in original) (quoting *Hudson*, 547 U.S. at 599), *cert. denied,* 142 S. Ct. 811 (2022).

Here, the search for evidence violated the Fourth Amendment. However, because suppression is "our last resort, not our first impulse[,]" *Hudson*, 547 U.S. at 591, the question is whether the exclusionary rule is the proper remedy for this particular violation. The trial court never reached the issue of whether exclusion of the evidence was appropriate, and if so, whether any exceptions to the exclusionary rule would be applicable, because it concluded that a valid search occurred. We

therefore reverse the Court of Appeals and remand to the trial court to determine if the evidence should be suppressed pursuant to the exclusionary rule.

REVERSED AND REMANDED.


Justice RIGGS did not participate in the consideration or decision of this case.

Chief Justice NEWBY concurring in part and dissenting in part.

The Fourth Amendment protects against unreasonable searches and seizures. The touchstone of the analysis is reasonableness. Because the steps taken by the law enforcement officers were reasonable under all the circumstances, the search did not violate defendant's constitutional rights. The officer's warrantless search was based on probable cause that evidence needed to identify the driver of a car involved in the crime of a hit-and-run accident was located in the car. The search was justified by the exigent circumstances of immediately needing to identify the perpetrator of the crime who had told bystanders he was fleeing because he had outstanding warrants. Were I to conclude, however, that the search violated defendant's constitutional rights, I would agree with the majority's decision to remand the case to the trial court to determine whether exclusion of the evidence is appropriate. *See State v. Welch*, 316 N.C. 578, 587–89, 342 N.C. 789, 794–95 (1986) (concluding that the good faith exception was applicable and therefore "decline[d] to apply the exclusionary rule to [a] good-faith violation of the [F]ourth [A]mendment").

We glean the following facts from the trial court's uncontested oral and written findings. On 20 May 2018, Trooper Sanders and Deputy Hicks responded to a one-car accident and hit-and-run in McDowell County. Dispatch informed the officers that the driver reportedly fled the scene on foot. Upon arriving at the scene, the officers observed a silver Suzuki SUV partially submerged in a ditch, as well as property

damage to the landscaping and premises at the accident scene. The officers began their investigation by speaking with defendant. Defendant, who was thirty-three years old at the time of the hit-and-run car accident, told Trooper Sanders that she was a passenger in the wrecked vehicle, which belonged to her parents. She said that she had allowed a person to drive the car, whom she knew only as Kyle, and that he fled on foot after the collision. Defendant, however, did not know Kyle's last name nor whether he had a driver's license or other forms of identification in the car. At this point, Trooper Sanders only knew the driver's alleged first name and did not have additional information to identify or locate the driver of the hit-and-run car accident.

The officers also spoke with two bystanders at the scene of the accident. The bystanders similarly identified the driver only as "Kyle" and described him with several physical characteristics. The bystanders informed the officers that the driver stated he had to leave the scene because he had multiple outstanding warrants for his arrest. The bystanders, however, also did not know Kyle's last name and could not provide additional information about the driver's identity or location.

Because defendant was uncertain as to whether the driver left identifying information in the car, Trooper Sanders subsequently searched it for anything that would help determine Kyle's identity. Upon entering the vehicle, Trooper Sanders discovered a black and green Nike bag in the front passenger seat of the vehicle. When asked, defendant stated the black and green Nike bag did not belong to her. He opened the bag looking for the driver's identification and saw a black box large enough

to contain a driver's license. Upon opening the box, Trooper Sanders discovered two clear plastic bags containing a crystal-like substance that he believed to be methamphetamine. The black box also contained two cell phones and a set of scales. As a result of discovering the drugs and drug paraphernalia in the front passenger seat, the officers placed defendant in handcuffs and searched defendant's pink backpack located by her feet outside of the vehicle. The officers found several clear, plastic bags containing a crystal-like substance later confirmed to be methamphetamine, a pistol, a glass pipe, and cash inside the pink backpack. The officers notified defendant she was under arrest. Defendant was charged with trafficking methamphetamine by possession, trafficking methamphetamine by transportation, possession with intent to sell and deliver a Schedule II controlled substance, and possession of methamphetamine.

Arguing that the search of the vehicle and her pink backpack violated her constitutional rights, defendant filed a motion to suppress the evidence obtained as a result of the search. After a hearing on the motion, the trial court provided an oral ruling denying the motion to suppress and filed a written order on 17 April 2019 memorializing the oral ruling. As relevant to the vehicular search, the trial court determined in conclusion of law #4 that

> Trooper J.L. Sanders did not know . . . the true identity of
> the suspect, the cause of the collision, the extent of any
> damage caused by the collision, or the reason the alleged
> perpetrator had fled, if any. . . . It was reasonable for J.L.
> Sanders to conclude that the vehicle may contain evidence
> of the true identity of the driver, the cause of the collision,

and/or the reason for the driver fleeing the scene, and he therefore had probable cause to search the vehicle for that evidence. Furthermore, Trooper Sanders had probable cause to arrest "Kyle" on suspicion that he had unserved orders for his arrest. As a result, Trooper J.L. Sanders had legal authority to search the vehicle and every place within the vehicle where any form of identification for Kyle Lytle could be found.

As relevant to the search of defendant's pink backpack, the trial court determined in conclusion of law #5 that

> [t]he discovery of what appeared to be methamphetamine and drug paraphernalia inside of the black and green Nike bag found in the passenger floorboard provided Trooper Sanders and Deputy Hicks with probable cause to arrest the defendant and search her pink backpack. The defendant had recently been an occupant of the vehicle wherein the contraband was discovered, and moreover she had recently occupied the seat near where it was found. Therefore there existed a fair probability that the controlled substances discovered were in the defendant's custody, care, or control, and also that the pink backpack she retained might contain further controlled substances or other paraphernalia.

At trial, defendant was found guilty of trafficking in methamphetamine by possession and possession of methamphetamine with the intent to manufacture, sell, or deliver. Defendant appealed.

On appeal, the Court of Appeals held the trial court properly denied defendant's motion to suppress. *State v. Julius*, 282 N.C. App. 189, 193, 869 S.E.2d 778, 782 (2022). The Court of Appeals explained that the officers "had reasonable suspicion to search the vehicle to verify" defendant's claims and "determine th[e] alleged driver's identity" because the driver's identification "may have reasonably

been determined from looking inside the wrecked vehicle." *Id*. Additionally, according to the Court of Appeals, the officers were justified in searching the vehicle for an inventory or for officer safety. *Id.* As to the search of defendant's pink backpack, the Court of Appeals concluded that once the officers discovered the drugs and drug paraphernalia in the black and green Nike bag, the officers had probable cause to arrest defendant and were therefore justified in searching the pink backpack. *Id.* at 192–93, 869 S.E.2d at 781–82; *see State v. Wooten*, 34 N.C. App. 85, 89–90, 237 S.E.2d 301, 305 (1977).

The dissenting judge at the Court of Appeals, however, contended that the evidence "did not establish probable cause for the warrantless search" of the vehicle and that the officers were not justified in searching the vehicle without a warrant. *Julius*, 282 N.C. App. at 195, 869 S.E.2d at 783 (Inman, J., dissenting in part and concurring in result only in part). Accordingly, the dissenting judge would have held that "[b]ecause the probable cause to arrest [d]efendant and search her pink backpack arose only from the illegal search of the vehicle, the evidence seized from [d]efendant's backpack also should have been excluded . . . ." *Id.* at 199–200, 869 S.E.2d at 786. Defendant appealed to this Court based on the dissent in the Court of Appeals. *See* N.C.G.S. § 7A-30(2) (2021).

The issue here is whether the trial court erred in denying defendant's motion to suppress evidence found during a search of the vehicle and defendant's pink backpack. This Court reviews a motion to suppress to determine "whether competent

evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." *State v. Malone*, 373 N.C. 134, 145, 833 S.E.2d 779, 786 (2019) (quoting *State v. Biber*, 365 N.C. 162, 167–68, 712 S.E.2d 874, 878 (2011)). The trial court's findings of fact "are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting." *Id.* (quoting *State v. Saldierna*, 371 N.C. 407, 421, 817 S.E.2d 174, 183 (2018)). The trial court's conclusions of law are reviewed de novo.[1] *Biber*, 365 N.C. at 168, 712 S.E.2d at 878 (citing *State v. McCollum*, 334 N.C. 208, 237, 433 S.E.2d 144, 160 (1993)).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" by the government. U.S. Const. amend. IV. The Fourth Amendment prohibits only unreasonable searches. *State v. Hilton*, 378 N.C. 692, 700, 862 S.E.2d 806, 812 (2021). To be constitutionally compliant, generally an officer needs a warrant to search. The Supreme Court of the United States and this Court, however, have recognized exceptions to the warrant requirement where there is probable cause and exigent circumstances. *See Welch*, 316 N.C. at 585, 342 S.E.2d at 793 ("[A] search warrant must be procured . . . unless probable cause and exigent circumstances exist that would justify a warrantless search.").

---

[1] On appeal, defendant challenges only the trial court's conclusion of law #4 as being unsupported by the evidence and contends conclusion of law #4 includes both findings of fact and conclusions of law. To the extent conclusion of law #4 includes findings of fact, there is substantial evidence to support the findings of fact. The conclusions of law are addressed further herein.

" '[T]he exigencies of the situation' [may] make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment." *Kentucky v. King*, 563 U.S. 452, 460, 131 S. Ct. 1849, 1856 (2011) (third alternation in original) (quoting *Mincey v. Arizona*, 437 U.S. 385, 394, 98 S. Ct. 2408, 2414 (1978)). The exigent circumstances exception enables law enforcement officers to act quickly in order to handle "situations presenting a compelling need for [swift] official action and no time to secure a warrant." *Lange v. California*, 141 S. Ct. 2011, 2017 (2021) (internal quotations omitted). "Such exigencies [may] include the need to pursue a fleeing suspect, protect individuals who are threatened with imminent harm, or prevent the imminent destruction of evidence." *Carpenter v. United States*, 138 S. Ct. 2206, 2223 (2022) (citing *King*, 563 U.S. at 460, 131 S. Ct. at 1856); *see Brigham City v. Stuart*, 547 U.S. 398, 126 S. Ct. 1943 (2006) (preventing the destruction of evidence); *United States v. Santana*, 427 U.S. 38, 42, 43, 96 S. Ct. 2406, 2409, 2410 (1976) (engaging in hot pursuit of a fleeing suspect). "In those circumstances, the delay required to obtain a warrant would bring about 'some real immediate and serious consequences'—and so the absence of a warrant is excused." *Lange*, 141 S. Ct. at 2017 (quoting *Welsh v. Wisconsin*, 466 U.S. 740, 751, 104 S. Ct. 2091, 2098 (1984)).

"[W]e 'examin[e] the totality of the circumstances,' " including the location, nature, and purpose of the search, to determine whether a search based on exigent circumstances is reasonable within the meaning of the Fourth Amendment. *Samson*

*v. California*, 547 U.S. 843, 848, 126 S. Ct. 2193, 2197 (2006) (second alteration in original) (quoting *United States v. Knights*, 534 U.S. 112, 118, 122 S. Ct. 587, 591 (2001)). "[T]he fact-specific nature of the reasonableness inquiry," *Ohio v. Robinette*, 519 U.S. 33, 39, 117 S. Ct. 417, 421 (1996), requires that we evaluate each case based on "the facts and circumstances of the particular case" from the perspective of an objective, reasonable officer, *Missouri v. McNeely*, 569 U.S. 141, 150–51, 158, 133 S. Ct. 1552, 1559–60, 1564 (2013) (recognizing that a "case-by-case approach is hardly unique within . . . Fourth Amendment jurisprudence"). We look at the circumstances through the eyes of an objectively reasonable officer, not the subjective views of a specific officer. *Ornelas v. United States*, 517 U.S. 690, 696, 116 S. Ct. 1657, 1661–62 (1996). Additionally, the location of the search is significant as individuals generally have a "decreased expectation of privacy" in automobiles. *State v. Isleib*, 319 N.C. 634, 637, 356 S.E.2d 573, 576 (1987).

In evaluating the reasonableness of a search, we examine whether the law enforcement officers acted with probable cause at each step of the investigation. The existence of probable cause is a "commonsense, practical question" that should be answered using a "totality-of-the-circumstances approach." *Illinois v. Gates*, 462 U.S. 213, 230, 103 S. Ct. 2317, 2328 (1983). Probable cause requires a "reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty." *State v. Harris*, 279 N.C. 307, 311, 182 S.E.2d 364, 367 (1971) (quoting 5 Am. Jur. 2d *Arrests* § 44 (1962)).

Probable cause to search exists when an objective officer would reasonably believe that a search would reveal information which would aid in the investigation. *United States v. Ross*, 456 U.S. 798, 824, 102 S. Ct. 2157, 2172 (1982). Thus, an objectively reasonable officer may search a vehicle without a warrant when the exigencies of the specific circumstances present a compelling need for swift official action, and the officer has "probable cause to believe that incriminating evidence will be found within." *Payton v. New York*, 445 U.S. 573, 587–88, 100 S. Ct. 1371, 1381 (1980). In conducting this inquiry, we are bound by the trial court's unchallenged findings of fact.

Here the steps taken by the law enforcement officers were reasonable under all of the objective circumstances, and each step of the officers' investigation was supported by probable cause. First, the officer's search of the vehicle for the driver's identification was reasonable and supported by probable cause. The trial court found that the officers responded to a vehicular accident in which dispatch informed them that the driver may have fled the scene. Upon arriving at the scene, the officers observed a vehicle partially submerged in a ditch and property damage to the surrounding premises. The officers then confirmed that there had been a hit-and-run and were told that defendant loaned her parents' car to an unknown person, identified only as "Kyle." Based on the objective circumstances, it was reasonable for the officers to seek to fully identify the unknown, fleeing suspect allegedly responsible for the hit-and-run car accident as a person's identity is relevant information

regarding the criminal violation. The search was of a vehicle, to which there is less constitutional protection. Defendant informed the officers that she did not know if information to identify the driver remained in the car.

The officers learned only minimal identifying information from the bystanders and defendant. Specifically, the trial court found that the bystanders and defendant told the officers that the driver of the vehicle fled but provided the officers only with the driver's alleged first name and several physical characteristics. The bystanders and defendant could not provide a complete physical description of the driver or provide the driver's last name. They could not tell the officers where the driver fled. In addition, and significantly, the officers learned that the unknown suspect fled the scene because he had multiple, active warrants for his arrest. The officers, however, did not know the nature of the driver's outstanding warrants. Accordingly, the officers could not assess the potential danger that the unknown suspect presented to the surrounding community. These circumstances presented a compelling need for the officers to act quickly in order to determine Kyle's true identity and assess the potential threat that he presented. The officers therefore had probable cause to arrest Kyle for the hit-and-run car accident and, if verified, the outstanding warrants.

Thus, the officers were presented with an unusual set of circumstances in which they had little information about the identity, location, and potential threat posed by the fleeing driver of the wrecked vehicle. Moreover, defendant did not know whether information to identify "Kyle" was located in the vehicle. Without additional

information from the bystanders and defendant, it was reasonable for the officers to conclude that information existed in the vehicle that would identify "Kyle."[2] Therefore, because the officers developed probable cause to arrest Kyle for the hit-and-run car accident and the outstanding warrants, and because the officers had probable cause to believe evidence of Kyle's identity may reasonably be located in the car, the officers had probable cause to search the car for the alleged driver's identification.[3]

The totality of the circumstances reveals the exigencies justifying the officer's warrantless search of the car. First, the officers had probable cause to arrest Kyle as the hit-and-run driver. The officers also knew Kyle was in the neighborhood and learned that Kyle had outstanding warrants, but the officers did not know the nature of Kyle's active warrants. Furthermore, the officers had probable cause to believe that information to identify the driver remained in the car. Also, the location of the search was significant as a car has less protection from governmental intrusion than other places. If the officers left the car at the scene of the hit-and-run accident, it was reasonable to believe the driver's identifying information could be removed or

---

[2] The officers' ultimate identification of "Kyle" did not occur until after the officers had been at the scene for some time, attempted to learn the driver's full identity from the bystanders and defendant, and had already searched the car.

[3] Not only did the officers have probable cause to search the car for information that would aid the officers in quickly identifying and locating the unknown suspect, but the evidence also indicates that defendant did not object when Trooper Sanders informed defendant that he was going to search the car for such information. Therefore, an objective officer may reasonably conclude that defendant impliedly consented to the search of the car.

destroyed. Thus, an objective officer would reasonably conclude that an immediate search was necessary to prevent the destruction of information that could lead to Kyle's identification. Given the exigencies, an immediate search of the vehicle could aid the officers in promptly identifying and locating the suspect and in quickly assessing any immediate threat that he posed to the community. Taken together, these facts created exigent circumstances justifying the officer's warrantless search of the car. *See Carpenter*, 138 S. Ct. at 2223 (noting three exigencies—the need to pursue a fleeing suspect, to protect individuals who are threatened with imminent harm, and to prevent the imminent destruction of evidence—that may justify a warrantless search).

Next, the officers acted reasonably and with probable cause in searching the black and green Nike bag.[4] Based on the probable cause to search the vehicle and the exigencies, Trooper Sanders located a black and green Nike bag in the front, passenger area of the vehicle while looking for the driver's identification. Trooper Sanders had probable cause to believe the Nike bag may contain information that would aid the officers in identifying the driver. As a result, Trooper Sanders searched

---

[4] "[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable." *Minnesota v. Carter*, 525 U.S. 83, 88, 119 S. Ct. 469, 472 (1998). Defendant testified that Kyle brought the black and green Nike bag to the car with him and that he placed it in the vehicle. Defendant explained that she did not touch or open the bag while it was in the car. Based on defendant's testimony, it appears defendant did not have a reasonable expectation of privacy in the Nike bag justifying her challenge to the search of the bag.

the Nike bag, found a black box large enough to contain a driver's license in the bag, and upon opening the black box, discovered the illegal drugs and drug paraphernalia.

Finally, upon discovering the contraband in the Nike bag, the officers developed probable cause to arrest defendant for possession of the contraband in the car. Because the officers found the Nike bag in the passenger area where defendant was sitting, they had probable cause to believe defendant and Kyle were together involved with the drugs. Further, they had probable cause to believe defendant may be in possession of additional contraband. The officers therefore had probable cause to search defendant's pink backpack for additional contraband based on the discovery of the contraband in the vehicle. Any uncertainty as to the timing of defendant's arrest and search of the pink backpack—namely, whether the arrest occurred before or after the officers searched the pink backpack—is thus immaterial here because the officers developed probable cause to arrest defendant and search her pink backpack based on the contraband discovered in the vehicle. *See Wooten*, 34 N.C. App. at 89–90, 237 S.E.2d at 305 ("[W]here a search of a suspect's person occurs before instead of after formal arrest, such search can be equally justified as 'incident to the arrest' provided probable cause to arrest existed prior to the search and it is clear that the evidence seized was in no way necessary to establish the probable cause. . . . [W]e see no value in a rule which invalidates the search merely because it precedes actual arrest.").

The primary command of the Fourth Amendment is that law enforcement

officers act reasonably. Because the officers here acted reasonably during each step of the search, defendant's constitutional rights were not violated. Nonetheless, were I to find that the search violated defendant's constitutional rights, I would agree with the majority's decision to remand to the trial court to determine whether exclusion of the evidence is appropriate and, if so, whether any exceptions to the exclusionary rule apply. Notably, since 1986, we have recognized the good faith exception is applicable to violations of the Fourth Amendment. *Welch*, 316 N.C. at 587–89, 342 N.C. at 794–95. Thus, I respectfully concur in part and dissent in part.